UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico Corporation,<br><br>       Debtor, | Chapter 11<br><br>Case No. 18-13027-t11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico Corporation,<br><br>       Plaintiff,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY; ARROWOOD INDEMNITY COMPANY, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, as itself and as successor to or assignee of St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company; and UNITED STATES FIRE INSURANCE COMPANY,<br><br>       Defendants. | Adversary Proceeding No.:22-01005-t |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARROWOOD INDEMNITY COMPANY TO WITHDRAW THE GENERAL ORDER OF REFERENCE AND TO REMOVE THE ADVERSARY PROCEEDING PENDING IN THE U.S. BANKRUPTCY COURT FOR THE DISTRICT OF NEW MEXICO TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO**

Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America ("Arrowood"), for good cause shown, requests that the Court withdraw the standing reference to the bankruptcy court with respect to the adversary proceeding (Adv. Proc. No. 22-01005-t) commenced on February 22, 2022, upon the filing of the

Complaint (Doc. No. 946,[1] A.P. Doc. No. 1, the "Complaint"), by the Roman Catholic Church of the Archdiocese of Santa Fe (the "Debtor" and the "Archdiocese"), to the District Court for the District of New Mexico, pursuant to original jurisdiction granted to the District Court by 28 U.S.C. § 1334(a) and diversity jurisdiction granted by 28 U.S.C. § 1332(a), and respectfully submits the following memorandum.

## PRELIMINARY STATEMENT

The District Court may withdraw, in whole or in part, any case or proceeding referred under 28 U.S.C. § 157(d), on its own motion or on timely motion of any party, for cause shown. Through the Complaint, the Archdiocese seeks a ruling interpreting the rights and obligations of the Archdiocese as set forth in insurance policies and settlement agreements all agreed to long before the commencement of the bankruptcy proceeding. As described more fully below, case after case has found that bankruptcy courts cannot enter final orders in contractual disputes between debtors and their insurers related to pre-petition contracts. Because the Complaint presents just such a dispute and for such additional relevant factors set forth below, cause exists for withdrawing the reference and allowing the Adversary Proceeding to be heard by the District Court.

## PROCEDURAL HISTORY

### I. The Archdiocese Files For Bankruptcy

On December 3, 2018, the Archdiocese filed its petition seeking relief under Chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") to address mounting numbers of sexual abuse claims against it. The petition revealed that the Archdiocese's creditors who have the 20 largest unsecured claims are all abuse claimants and, at the time the petition was filed, numerous civil lawsuits filed by abuse claimants were pending against the Archdiocese. (Doc. No. 1.)

---

[1] Except as otherwise set forth, all references to ECF docket numbers are filings in the Archdiocese's bankruptcy proceeding.

## II.          The 1996 Coverage Litigation and Resulting Settlement Agreement

For many years, Debtor maintained a liability insurance program that covered claims for bodily injury, including sexual abuse. (November 12, 2021, Opinion, Doc. No. 882, p. 2; *see also* Doc. 994 providing that Doc. 882 shall be redacted and reentered on the docket, Doc. No. 882, p. 2.) As the number of sexual abuse claims asserted against the Debtor increased in the 1990s, the insurers began to raise coverage issues. Coverage litigation ensued. (Doc. No. 882, p. 2.) In 1996 – more than a quarter of a century ago, and 22 years before the Archdiocese filed its petition – in order to resolve the coverage litigation, Great American Insurance Company, St. Paul Fire & Marine Insurance Company, Royal Insurance Company of America (now known as Arrowood), and United States Fire Insurance Company (collectively, the "Pre-1977 Carriers") and the Archdiocese entered into a settlement agreement laying out the manner in which sexual abuse claims would be handled going forward (the "Agreement"). (Complaint, Ex. 2).[2]

To reach an agreement, each party made certain promises and compromises to the other and gave up certain claims and defenses. Moreover, the Agreement includes ongoing obligations to be performed by each of the Archdiocese and the Pre-1977 Carriers, and like any executory contract, fails if one party does not perform while seeking to hold the other parties to their promises and compromises. At its core, the Agreement is a funding arrangement for claims against the Archdiocese for sexual abuse which occurred from 1965 to 1977. The promises and compromises that were made are expressly stated in the Agreement as shares of future liability, and the allocation between the parties for funding of such liabilities is indispensable to the settlement that was

---

[2]          A separate settlement agreement between the Archdiocese and St. Paul Fire & Marine Insurance Company, referred to as the "St. Paul Agreement," relating to claims alleging abuse between February 11, 1953 and January 1, 1960 was executed in June of 1996 and is also the subject of the Adversary Proceeding. Arrowood is not a party to the St. Paul Agreement. (Complaint, Ex. 1.)

3

reached and memorialized in the Agreement. The Agreement is a risk sharing mechanism and ensures the "skin in the game" concept – alignment of interests between the Archdiocese and the Pre-1977 Carriers – critical to the defense and indemnity obligations of the parties relative to hundreds of pending sexual abuse claims. Without such risk allocation, the entire Agreement fails.

Under the Agreement, the sexual abuse claims presented over the decades which involved the Pre-1977 Carriers and the Archdiocese were all resolved without dispute from the execution of the Agreement until the summer of 2021. Then, the Archdiocese and the Unsecured Creditors Committee appointed in the bankruptcy case (the "UCC") reached a proposed settlement, under which Debtor would contribute REDACTED[3] to pay abuse claims and the insurers would contribute REDACTED. (Doc. No. 882, p. 2.) The insurers were not part of the negotiations that resulted in that proposed agreement, were not consulted about the REDACTED amount, and balked at the proposed agreement. (Doc. No. 882, p. 1.) After the proposed settlement was agreed to by Debtor and the UCC, Debtor submitted claims and demands to each insurer. (Doc. No. 882, p. 3.) The insurers did not agree to the demands. (Doc. No. 882, p. 3.) Debtor also demanded that the insurers Carriers acknowledge their obligation to contribute to the proposed settlement. (Doc. No. 882, p. 3.) The insurers declined to do so. (Doc. No. 882, p. 3.)

## III.     The Contingent Settlement and the Motion to Compel

In 2021, the Archdiocese aligned itself with its creditors, despite the plain language setting forth the Archdiocese's rights and obligations under the Agreement, in an effort to manufacture conflicts with the Pre-1977 Carriers with hopes of obtaining favorable determinations from the Bankruptcy Court in order to bolster bargaining power with the Pre-1977 Carriers. After entering

---

[3]     Where the word REDACTED appears in capital letters, a dollar figure has been redacted.

into a contingent settlement with the creditors through months of negotiations behind the insurers' backs and shutting them completely out in violation of the Agreement, the Archdiocese sought to compel the Pre-1977 Carriers to arbitrate three non-arbitrable issues.  (Doc. No 882, pp. 1-3.) Arrowood promptly sought to withdraw the reference with regard to the Motion to Compel because the Motion to Compel presented significant and entangled questions which, at their essence, asked the Bankruptcy Court to allow an arbitrator to entertain whether the Archdiocese could rewrite pre-petition third-party contracts.  (*See Motion for Withdrawal of U.S. District Court Reference*, Doc. No. 826, the "First Withdrawal Motion".)[4]

On November 12, 2021, before the District Court could rule on the First Withdrawal Motion, the Bankruptcy Court issued an Opinion (the "Opinion") denying the Motion to Compel with respect to substantially all of the issues set forth therein, finding that the language included in the Agreement and the difficulties presented in attempting to arbitrate the issues presented in the Motion to Compel show why arbitration cannot be compelled.  (Doc. No. 882.)[5]

After the Bankruptcy Court entered the Opinion, the parties agreed that the Archdiocese, the Pre-1977 Carriers, and the various claimant parties would return to mediation, which resulted in the Third Stipulated Mediation Order (Doc. No. 918) being entered by the Bankruptcy Court on January 11, 2022.  Contemporaneously, the District Court sought direction on what issues remained outstanding to adjudicate in response to the First Withdrawal Motion in light of the Bankruptcy Court's Opinion.  (Case No. 21-cv-00975-KG-GJF, Doc. No. 16.)  Arrowood

---

[4]    The First Withdrawal Motion resulted in the commencement of a separate proceeding pending before the District Court having Case No. 21-cv-00975-KG-GJF.

[5]    St. Paul Fire & Marine Insurance Company is party to a separate settlement agreement with the Archdiocese, and it conceded that one of the questions presented in the Motion to Compel was arbitrable.  With respect to the Agreement, the Bankruptcy Court denied each aspect of the Motion to Compel.

informed the District Court of the pending mediation and requested that the District Court hold the issues presented in abeyance pending hopeful resolution through mediation, but expressed that the Withdrawal Motion still presented justiciable issues regarding the authority of the bankruptcy court.  (Case No. 21-cv-00975-KG-GJF, Doc. No. 17.)  The Archdiocese requested that the First Withdrawal Motion be dismissed as moot, or in the alternative held in abeyance.  (Case No. 21-cv-00975-KG-GJF, Doc. No. 18.)

## IV.　　　The Adversary Proceeding

Notwithstanding the pendency of the ongoing mediation, the Archdiocese has now filed a Complaint in which it again advocates for a court to rewrite the Agreement in a way that strips the insurers of their rights, this time by disregarding its own breaches and baselessly accusing the Pre-1977 Carriers of breaching the Agreement (although nowhere in the Complaint does the Archdiocese state in what manner the insurers allegedly breached the Agreement) and seeking a declaratory judgment that relieves the Archdiocese from its promises and obligations under this executory contract while at the same time seeking to require the insurers to comply with their promises.[6]  Despite having received the benefits of more than two decades of performance under the Agreement, the Archdiocese now asserts, without any supporting factual allegations, that the Pre-1977 Carriers are in breach and asks that the Bankruptcy Court offer an advisory opinion as to the meaning of the Agreement.

While the Complaint explicitly says little as to the totality of relief being sought, it does ask the court to determine that "each Defendant Insurer is obligated to provide coverage for the Underlying Sexual Abuse Claims, and this obligation of Defendants exists irrespective of whether

---

[6]     The Archdiocese has apparently abandoned the arbitration it once sought to compel, insofar as it has not sought to prosecute arbitration with St. Paul of the sole arbitrable issue compelled by the Opinion.

6

the Archdiocese pays a percentage share of the Underlying Sexual Abuse Claims." Thus, the Archdiocese seeks a finding that would support an utter failure of consideration of the contract made in 1996 – that the court (a) hold that the Archdiocese need not comply with the Agreement that (i) provides the insurers with the right to control settlements and (ii) requires the Archdiocese, absent a waiver by the insurers, to pay its agreed 25% share of a settlement or judgment, and (b) sanction the Archdiocese's efforts to usurp control of settlements among and with the claimants in contradiction of the terms of the Agreement. Meanwhile, per the Complaint, the Archdiocese demands that the insurers must (i) be deprived of their express rights to control and approve the settlement of underlying claims (including the right to settle a claim with the Archdiocese paying its full pro rata share even if the Archdiocese objects to the amount or, if a claimant makes a settlement demand that the Archdiocese wants to accept, to object to the reasonableness of the demand), (ii) be bound by their promises to pay their agreed 75% share of claims implicated by the Agreement despite that the Archdiocese is permitted to breach its promises, and (iii) be held to the waiver of certain coverage defenses included in the Agreement.

The Bankruptcy Court, without the consent of the parties, lacks statutory and constitutional authority to finally determine the issues presented by the Archdiocese in the Adversary Proceeding. The Adversary Proceeding is based entirely on state law contract interpretation of the Agreement[7] – an agreement which has been in place since 1996 and has not been modified or otherwise disputed by the commencement of the Archdiocese's bankruptcy proceeding. The issues presented therein are statutorily non-core to the bankruptcy proceeding. Moreover, the Complaint seeks to add obligations to and create unbargained-for burdens upon non-debtor third parties that have not filed proofs of claim or consented to bankruptcy jurisdiction. Thus, the Bankruptcy Court

---

[7]     The Agreement's choice of law provision provides that the laws of New Mexico will be applied to any dispute arising as to its enforcement.

7

lacks constitutional authority to enter final orders or judgments resolving the Adversary Proceeding. Furthermore, the limitations to the Bankruptcy Court's authority to finally resolve the Adversary Proceeding means that keeping this matter before the Bankruptcy Court will result in substantial judicial inefficiency and wasted resources of the parties. For the reasons set forth below, efficiency and judicial economy favor immediate withdrawal by this Court of the automatic reference of the pending Adversary Proceeding and related disputes, if any, from the Bankruptcy Court.

## ARGUMENT

**I.**      <u>**Legal Standard**</u>

     A.      <u>Jurisdiction</u>

Federal district courts are vested with nonexclusive subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts are authorized by statute to refer such proceedings to the bankruptcy courts within their district. 28 U.S.C. § 157(a). The District Court for the District of New Mexico has provided by administrative order that "all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for the district to the extent permitted by law." *In re Reference to Bankruptcy Judges and Local Bankruptcy Rules*, Misc. No. 84-0324 (D.N.M. March 19, 1992).

However, bankruptcy courts operate under constitutional limits on authority, insofar as bankruptcy judges lack the necessary prerequisites to qualify as Article III judges, and thus lack the authority to finally determine certain causes of action.[8] Therefore, even when a matter is referred to the bankruptcy court, the court may lack authority to finally resolve such a matter.

---

[8]      Article III, § 1 of the Constitution mandates that the "Judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may

8

The Supreme Court, in *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011), set out the constitutional limitations on authority of a bankruptcy court. *Stern* found it unconstitutional for a bankruptcy court to enter final judgment on a counterclaim raised by a creditor against a debtor despite § 157(b)(2)(C) including counterclaims within the non-exhaustive list of core types of bankruptcy claims. 564 U.S. 462, 462-63, 131 S. Ct. 2594, 2596 (2011). Under *Stern*, bankruptcy courts have constitutional authority to enter final orders resulting in liability of non-debtors in three instances: (1) the respondent filed a proof of claim in the bankruptcy proceeding, (2) the right being adjudicated is a public right of action, or (3) the parties consented to the bankruptcy court's jurisdiction. *Stern,* 564 U.S. at 487-96, 131 S. Ct. at 2612-2616; *see also*, *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.,* No. 14-CV-1083, 2014 U.S. Dist. LEXIS 98041, *6-7, 2014 WL 3583089, *3 (S.D.N.Y. July 18, 2014). Thus, despite the core nature of the bankruptcy court's adjudication of a claim brought by the bankruptcy estate pursuant to § 157(b)(2)(C), bankruptcy courts constitutionally cannot finally adjudicate certain claims. *Id.*

The Supreme Court revisited the issue in *Exec. Benefits Agency v. Arkinson*, 573 U.S. 25, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014), and *Wellness Int'l Network, Ltd v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 191 L. Ed. 2d (2015), finding that, despite the holding in *Stern*, bankruptcy courts can make recommendations of fact and law to the district court and that parties could consent to bankruptcy jurisdiction regardless of whether a claim was a *Stern*-type claim. However, the constitutional implications of *Stern* remain clear – without consent, a bankruptcy court cannot enter final orders in certain instances. This is one of those instances.

---

from time to time ordain and establish." and provides that the judges of those constitutional courts "shall hold their Offices during good Behaviour" and "receive for their Services[] a Compensation[] [that] shall not be diminished" during their tenure.

9

Like many of the other terms in § 157 of Title 28, the term "final order or judgment" is not defined.  Thus, courts must turn to case law to determine when an order is final.  Although the Supreme Court conceded that "[n]o verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future," it noted that determining whether a judgment or order is final "in most cases is plain enough."  *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S. Ct. 2140, 2149 (1974).  According to the Tenth Circuit, "an order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Adelman v. Fourth Nat'l Bank & Trust Co., N.A.* (*In re Durability, Inc.*), 893 F.2d 264, 265 (10th Cir. 1990).

Thus, when seeking to determine whether a bankruptcy court may finally adjudicate a matter, analysis of both § 157 of Title 28 and a *Stern* analysis are necessary, as the court needs to act within its congressional *and* constitutional limits.

B.    Withdrawal

Although Congress granted the authority to refer matters to the bankruptcy court, it does not require such referral, and it grants the district court the right to withdraw matters from the bankruptcy court even after they are referred.  Pursuant to 28 U.S.C. § 157(d), the district court <u>must</u> "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  Even when questions of competing federal laws or interstate commerce are not at issue, withdrawal may be appropriate.

Alternatively, district courts <u>may</u> withdraw "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  Known as permissive withdrawal, district courts have "broad discretion" to

10

withdraw the reference for cause. *Wagner v. Dreskin (In re Vaughan Co.)*, Civ No. 13-631 JCH/KK, 2015 U.S. Dist. LEXIS 193857, *9, 2015 WL 13666987, *3 (D.N.M. Jan. 28, 2015); *see also In re Enron Corp.*, 295 B.R. 21, 25 (S.D.N.Y. 2003).

The statute refrains from determining what type of "cause" justifies withdrawal and the Tenth Circuit has not yet "provided comprehensive guidance on the issue." *In re Kelley*, Civil Action No. 16-cv-756-MSK, 2016 U.S. Dist. LEXIS 83035, *6, 2016 WL 3475196, *2 (D. Colo. June 27, 2016). However, this court has stated that the factors considered in determining whether to withdraw the reference are: "'(1) whether the proceeding is core or non-core;[9] (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of the debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process; and (7) the presence of a jury demand.'" *In re Vaughan Co.*, 2015 U.S. Dist. LEXIS 193857 at *10-11, 2015 WL 13666987 at *4, citing *In re Cook*, Civil No. 09-803 JCH/CEG, 2010 U.S. Dist. LEXIS 51541, *6-7, 2010 WL 1734737, *3 (D.N.M. April 19, 2010). Other courts have applied similar standards. *See, e.g., In re Kelley*, 2016 U.S. Dist. LEXIS 83035 at *6, 2016 WL 3475196 at *2; *Security Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997); *In re Orion Pictures, Corp.*, 4 F.3d 1095, 1101 (2d Cir.

---

[9]    As is discussed in more detail below, while the district court in *In re Vaughan Co*. labelled this factor as a core/non-core determination, it is clear that was shorthand for determining whether the bankruptcy court has authority (constitutional or statutory) to enter a final order. *In re Vaughan Co.*, 2015 U.S. Dist. LEXIS 193857 at *17, 2015 WL 13666987 at *6 ("the bankruptcy court has authority to hear these claims, although it cannot enter final judgment. *See* 28 U.S.C. § 157(c)(1). The fact that the claims are not core proceedings weighs in favor of withdrawing the reference. . . ."); *see also Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indem. Co.*, 20-CV-11011 (VEC), 2021 U.S. Dist. LEXIS 94233, *7, 2021 WL 1978560, *3 (S.D.N.Y. May 17, 2021) ("Some courts have replaced *Orion*'s threshold core versus non-core determination with *Stern*'s three-pronged test that determines whether the bankruptcy court has constitutional authority finally to adjudicate a matter. Other courts have maintained the original *Orion* factors but have added the *Stern* test as a further inquiry.").

1993); *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990); *In re Simmons*, 200 F.3d 738, 741-42 (11th Cir. 2000); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985).

## II. Cause Exists to Withdraw the Reference Under The Analysis Adopted By This Court And Federal Circuit Court Of Appeals as to When Withdrawal Is Due

As described above, this Court and the federal Courts of Appeals[10] have universally engaged in a seven-factor test. Applying these factors here, this Court should withdraw the reference of the Adversary Proceeding.

### A. The Adversary Proceeding Presents A Non-Core Issue, And The Bankruptcy Court Lacks Constitutional Authority To Finally Decide the Adversary Proceeding

The first factor that courts typically consider when weighing whether permissive withdrawal is appropriate is whether the issues, or any of them, present proceedings that the bankruptcy court may not finally adjudicate, whether due to constitutional limitations or the proceeding being non-core. Although 28 U.S.C. § 157 lists a non-exclusive list of core proceedings, it does not define what is or is not core. In the absence of a statutory definition, the Tenth Circuit holds that "core proceedings are proceedings which have no existence outside of bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990). Courts in the Tenth Circuit have long held that suits or proceedings on prepetition contracts are non-core. *In re Nell*, 71 B.R. 305, 308 (D. Utah 1987); *see also United Methodist Youthville, Inc. v. Lutheran Soc. Servs. (In re United Methodist Youthville, Inc.)*, 289 B.R. 754, 757-58 (Bankr. D. Kan. 2003).

---

[10]     *See, e.g., In re Pruitt*, 910 F.2d 1160, 1164 (3rd Cir. 1990); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1021, 114 S. Ct. 1418, 128 L. Ed. 2d. 88 (1994); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985); and *Security Farms v. International Bd. of Teamsters*, 124 F.3d 999, 1008-09 (9th Cir. 1997).

12

At issue here, the Agreement predates the Archdiocese's bankruptcy proceeding by 22 years, was performed by all parties to their satisfaction without incident or dispute and, because its terms are clear and unambiguous, without a need for judicial interpretation for over two decades, and its terms have not been altered by the bankruptcy proceeding.[11]

The determination as to whether a matter may be finally resolved by the bankruptcy court has frequently been treated as the most significant factor in resolving whether to withdraw the reference because it has been used as shorthand for whether the bankruptcy court has authority to finally adjudicate the matter. *See Roman Catholic Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds*, 634 B.R. 226, 232 (S.D.N.Y. 2021) ("As a result of [the holding in *Stern*], it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority because some core claims cannot be finally adjudicated by the bankruptcy court." [Citation and internal quotation marks omitted.]);[12] *see also Lehman Brothers Holdings, Inc. v. Hometrust Morg. Co.*, No. 15 Civ. 304(PAE), 2015 U.S. Dist. LEXIS 23407, *6, 2015 WL 891663, *2 (S.D.N.Y. Feb. 25, 2015). Thus, in a post-*Stern* review, where authority to adjudicate

---

[11]  *See In re Northwest Exploration Co.*, 71 B.R. 873 (Bankr. N.D. Okla. 1987) (explaining that the case law, § 157 of Title 28, and § 1141(a) of the Bankruptcy Code make it clear that a bankruptcy court cannot modify third-party obligations under pre-petition contracts unless provided for in § 1141); *see also, Matters of Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) (holding that "bankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984) (holding that the Bankruptcy Code is not intended to expand debtor's rights against others more than they existed at the commencement of the case); *641 Associates, Ltd., v. Balcor Real Estate Fin. (In re 641 Associates, Ltd.)*, Bankruptcy No. 91-11234S, 1993 Bankr. LEXIS 1191, *20-21, 1993 WL 332646 at *8 (E.D. Pa. Aug. 26, 1993) ("There is no provision in the Bankruptcy Code allowing a bankruptcy court to disregard state-law contractual rights."); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties").

[12]  *Diocese of Rockville Ctr. v. Certain Underwriters* and *Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indemnity Co.*, 20-CV-11011 (VEC), 2021 U.S. Dist. LEXIS 94233, 2021 WL 1978560 (S.D.N.Y. May 17, 2021) , discussed below, arise out of the same case, and the court granted both insurers' motions for withdrawal of the reference.

13

turns on both the language of § 157 and the three-pronged *Stern* analysis, merely determining whether a proceeding is core fails to answer the pertinent question: can the bankruptcy court finally resolve the matter?  Thus, the first factor requires both an assessment of whether the claim is core *and* whether it satisfies *Stern*.

As set forth above, under *Stern*, a bankruptcy court can finally enter orders binding non-debtor third parties in instances in which (a) they have filed a proof of claim, (b) they have consented to jurisdiction of the bankruptcy court, or (c) the claim to be adjudicated is a public right of action.  In this case, Arrowood has not filed a proof of claim, it has expressly not consented to the jurisdiction of the Bankruptcy Court, and all issues in play under the Adversary Proceeding are private rights of action – they are state law contractual disputes.

*Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indemnity Co*., 20-CV-11011 (VEC), 2021 U.S. Dist. LEXIS 94233, 2021 WL 1978560 (S.D.N.Y. May 17, 2021), demonstrates why the Bankruptcy Court lacks final adjudicative authority over the contractual issues raised by the Adversary Proceeding, and that the issues raised are non-core issues, and thus the reference should be withdrawn from the Bankruptcy Court.  In *Diocese of Rockville Ctr. v. Arrowood*, the Diocese filed for Chapter 11 bankruptcy, claiming its petition was motivated by New York state legislation that allows alleged victims of sexual abuse to assert claims that had previously been barred by the statute of limitations.  On the same day that it filed for bankruptcy, the Diocese filed an adversary proceeding, much like the Adversary Proceeding in this case, against various insurance companies, including Arrowood, seeking a declaratory judgment regarding the scope of its insurance coverage and damages for breach of contract.  Arrowood filed a motion to withdraw the reference.  The district court granted the motion, finding that Arrowood showed cause for permissive withdrawal.  *Rockville Ctr. v. Arrowood*, 2021 U.S. Dist. LEXIS 94233, *29, 2021 WL

14

1978560 at *11.  The court noted that, in *Stern*, the Supreme Court held that even if a claim is deemed core under Section 157, bankruptcy courts lack final adjudicative authority unless "(1) the defendant filed a proof of claim in the bankruptcy proceeding; (2) the right being adjudicated is public rather than private; or (3) the parties consented to have the bankruptcy court enter final judgment." *Id*. at 2021 U.S. Dist. LEXIS 94233, *9, 2021 WL 1978560, *3, quoting *Lehman Bros. Holding Co*., 2014 U.S. Dist. LEXIS 98041, 2014 WL 3583089 at *3.  The district court then stated:

> None of these exceptions applies here.  Arrowood, as the Diocese's alleged insurer, has not filed a claim against the Diocese's estate in the underlying bankruptcy proceeding, and the parties have not consented to the bankruptcy court entering a final judgment in this matter. *See Memo of Law,* Dkt. 4, at 18, Civil Action No. 20-CV-11011 (VEC) (S.D.N.Y.).

> Moreover, the rights being adjudicated are private.  Public rights derive from "a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Stern*, 564 U.S. at 490. Although the "exact contours of the public rights exception" remain unclear, a state law breach of contract claim does not implicate a public right. *Dynegy Danskammer*, 905 F. Supp. 2d at 531; *see also In re Arabco Cap. Mgmt., LLP*, 479 B.R. 254, 266 (S.D.N.Y. 2012) (finding that state common law claims, including breach of contract, "are indisputably private rights").  Here, the Diocese seeks a declaratory judgment to determine its rights under a contract, and it alleges breach of contract.  These are quintessential state common law claims and, accordingly, they do not involve public rights.

> Because Arrowood has not filed a claim against the Diocese's estate, the parties have not consented to the Bankruptcy Court entering a final judgment, and the rights involved are private, the Bankruptcy Court does not have constitutional authority to enter a final judgment in this matter.

*Rockville Ctr. v. Arrowood*, 2021 U.S. Dist. LEXIS 94233 at *9-10, 2021 WL 1978560 at *4.

The district court also held that the claims against Arrowood were statutorily non-core:

> The claims at issue in this matter are non-core. The Diocese's case against Arrowood concerns who bears financial responsibility for certain tort claims; it does not concern the validity of the underlying claims.  Resolution of this matter requires contract interpretation to ascertain the Diocese's rights pursuant to insurance policies that exist independent of the bankruptcy case.  Moreover, the

15

insurance policies at issue are pre-petition contracts that were allegedly entered into decades before the bankruptcy petition was filed, further demonstrating that the claims at issue are non-core. *See In re Coudert Bros*., No. 11-CV-4949, 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011) ("Where a contract sued upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws."). As the Diocese's claims against Arrowood do not turn on the bankruptcy laws, arose before the bankruptcy petition was filed, and are independent of the bankruptcy proceedings, the claims at issue are non-core.

*Rockville Ctr. v. Arrowood*, 2021 U.S. Dist. LEXIS 94233 at *11-12, 2021 WL 1978560 at *5.

The facts in this case are virtually identical. The Bankruptcy Court does not have constitutional authority to enter a final judgment on the issues presented in the Adversary Proceeding. Arrowood has not filed a claim against the Archdiocese's estate in the bankruptcy proceeding,[13] the parties have not consented to the Bankruptcy Court entering a final judgment in the Adversary Proceeding,[14] and the issues raised by the Adversary Proceeding are private state common law claims that do not involve public rights. Moreover, the Agreement pre-dates the bankruptcy of the Archdiocese by two decades, the issues in the Adversary Proceeding do not turn on the bankruptcy laws, and any issue regarding the interpretation of the Agreement are matters of New Mexico contract law. Thus, the Adversary Proceeding is clearly non-core and subject to the constitutional limitations discussed in *Stern* and its progeny.

Notwithstanding the foregoing, Arrowood is compelled to address the dicta set forth in the Opinion with regard to whether issues related to the Agreement are core or non-core. In the

---

[13]   Notwithstanding the foregoing, Arrowood may file a counterclaim against the Archdiocese, but such counterclaim will not be for money owed, such that it would properly be resolved in the claims resolution process pursuant to the Bankruptcy Code. Moreover, if Arrowood elects to pursue such a counterclaim, it will do so because such claim or claims amount to compulsory counterclaims arising after the entry of the order for relief in the bankruptcy proceeding, pursuant to Federal Rule of Bankruptcy Procedure 7013. Arrowood does not intend to consent to the bankruptcy court finally resolving any such counterclaim.

[14]   And, as will be included in Arrowood's answer to the Complaint, Arrowood explicitly withholds such consent.

16

Opinion, Judge Thuma stated that the Motion to Compel presented core issues that the Bankruptcy Court could finally resolve because "[t]he current dispute, i.e. whether the insurers can be forced to contribute   as part of a chapter 11 reorganization would have no existence outside of bankruptcy." (Doc. 882, at p. 4.) The Opinion goes on to list that only in the context of the Archdiocese's bankruptcy could "300 covered claimants file[d] proofs of claim; could the UCC have been appointed; and could the Debtor hope to achieve a global settlement that would address all se abuse claims." (*Id*.) The Bankruptcy Court finally concluded that "[w]ithout bankruptcy, Debtor and the insurers would still be operating under the CIPs, one case at a time, and there would be no dispute." (*Id*.)

First, in deciding the Motion to Compel, Judge Thuma was not presented with the issue that is before this Court now – that is, whether the declaratory relief requested in the Adversary Proceeding to determine the rights and obligations of the parties to the insurance policies and Agreement presents a core proceeding. Furthermore, applying the Bankruptcy Court's reasoning contained in the Opinion to the issues presented in the Adversary Proceeding risks confusing the issues of subject matter jurisdiction set forth in Section 1334 of Title 28 with statutory and constitutional authority under *Stern* and Section 157 of Title 28. *See Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793 (10th Cir. 2009) ("Pursuant to § 1334(b), the district courts have . . . 'original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under title 11.' In accordance with this grant of jurisdiction, district courts may refer "core" and "related-to" proceedings to the bankruptcy courts for adjudication.") (internal citations omitted). In its Opinion, the Bankruptcy Court suggests that, because the issues presented in the Motion to Compel are influenced by the bankruptcy proceeding, they are core. Respectfully, this is not correct. There is no dispute over subject matter jurisdiction – Arrowood acknowledges

17

multiple theories supporting subject matter jurisdiction. "The lack of authority in the bankruptcy courts to enter final judgments in some bankruptcy related matters should not be confused with federal subject matter jurisdiction over bankruptcy matters." *King Oil Field Servs., LLP v. PricewaterhouseCoopers (In re Poseidon Concepts Corp.)*, 515 B.R. 811, 818 (Bankr. D. Colo. 2014). Thus, the standard for determining whether a matter is core or noncore in this Circuit is not whether the commencement of the bankruptcy proceeding initiates a set of facts that give rise to the cause of action, but rather whether the proceeding could have an existence outside of bankruptcy. *Gardner*, 913 F.2d at 1518.

The Adversary Proceeding prematurely seeks an advisory opinion with respect to three basic questions of New Mexico state contract law: (i) does the Archdiocese have an obligation to pay its 25% share under the Agreement, (ii) have the Pre-1977 Carriers breached the Agreement, and (iii) has the Archdiocese breached the Agreement? To determine whether those same questions could arise independent of bankruptcy, one simply needs to contemplate what may happen if the Archdiocese's bankruptcy proceeding never reaches confirmation. If, for instance, the Archdiocese fails to reach a settlement and confirm a plan of reorganization, its creditors will be left to proceed in state court to reach a settlement or obtain and enforce a judgment. If some or all succeed, they will then compete over the Archdiocese's assets, and the settlements or judgments entered against the Archdiocese may exceed the assets of the Archdiocese, rendering it insolvent. At that time, the exact same issues will emerge and would be ripe for determination – if the Archdiocese cannot pay its 25% obligation in connection with a settlement (which the carriers have the right to control) has it breached the Agreement? Do the Pre-1977 Carriers have to pay anything if the Archdiocese cannot perform and the insurers have not waived the Archdiocese's 25% contribution? Have the insurers breached by taking the position that they do not? The issues

18

presented in the Adversary Proceeding not only can exist outside of bankruptcy, they likely will if the Archdiocese cannot help bring about a resolution of this bankruptcy proceeding. Certainly, the Archdiocese could have presented the same questions without filing bankruptcy: it filed because it felt claimants breathing down its neck. Had it elected to attempt to effectuate a settlement outside of bankruptcy that modified or disregarded the payment obligations and control and waiver provisions as between it and the insurers under the Agreement, the exact same questions would be pertinent. The issues presented in the Adversary Proceeding are not unique to the bankruptcy proceeding nor do they arise in or under the Bankruptcy Code; rather they are issues to be resolved by applying New Mexico's state law for contractual interpretation.

B.      Withdrawing The Reference Will Preserve Judicial Resources And Will Save The Archdiocese And Arrowood From Additional Proceedings

As discussed above, the Adversary Proceeding presents non-core and *Stern*-type claims, and Arrowood does not consent to the Bankruptcy Court entering a final order resolving such claims. Nevertheless, the Archdiocese incorrectly asserted in its Complaint that its claim is core, and it will likely further argue, as it previously did in opposition to the First Withdrawal Motion, that the Bankruptcy Court possesses constitutional authority to enter a final order on the merits. Moreover, through dicta, the Bankruptcy Court tipped its hat in the Opinion that it was applying a different standard to determine whether a matter is core by looking not at the claims themselves but rather at the factual background giving rise to such claims. Given the views expressed in the Opinion, it is foreseeable that the Bankruptcy Court will incorrectly decide to rule on the merits of this matter, resulting in an appeal, which will then lead to a remand back to the Bankruptcy Court to enter proposed findings of fact and recommendations of law for the district court to review. Rather than a single review of the matter by this court, therefore, there may be two reviews by each of the Bankruptcy Court and the District Court.

19

Even if the Bankruptcy Court correctly determines it lacks authority to rule on the Adversary Proceeding, judicial economy supports withdrawing the reference. The Bankruptcy Court would be limited to making proposed findings of fact and conclusions of law under Bankruptcy Rule 9033, subject to *de novo* review by this Court.

C.    Uniformity In Bankruptcy Administration Will Not Be Hindered

As outlined above, the Adversary Proceeding presents non-core issues that are constitutionally non-justiciable before the Bankruptcy Court. Courts routinely determine that allowing a bankruptcy court to determine state law claims does not further the uniform bankruptcy administration amongst the various bankruptcy courts. *Dynergy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.,* 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012).

D.    Forum Shopping Is Not At Issue Here

"Motions to withdraw pose significant risks of forum shopping because a party can observe the bankruptcy judge's rulings, and then decide whether to bring the motion." *Loveridge v. Hall (In re Renewable Energy Dev. Corp.)*, 500 B.R. 77, 92 (D. Utah 2013). The record demonstrates Arrowood is not engaging in forum shopping. It filed the First Motion to Withdraw the Reference well prior to seeing how the bankruptcy judge's rulings would affect future proceedings identified in the Motion to Compel. Even after the Bankruptcy Court ruled in its favor, Arrowood continues to prosecute the First Motion to Withdraw. Here, again, Arrowood is seeking to withdraw the reference just five days after the Archdiocese served its Complaint. This is not a matter of forum shopping; Arrowood has a constitutional right to have disputes over private contracts adjudicated by Article III courts, and it has consistently insisted on that right.

E.    The Archdiocese Bankruptcy Proceeding Will Be Expedited

As expressed above, denying this motion runs the risk of quadrupling the judicial review necessary to resolve the Adversary Proceeding. At a minimum, denying this motion will result in

the need for two courts to review the issues before a final order may be entered regarding the interpretation of the Agreement, which obviously takes time. Bankruptcy Rule 9033 requires the Bankruptcy Court to submit proposed findings of fact and conclusions of law to the District Court for review, and provides the parties fourteen days to object to those proposed findings. Upon receipt of the proposed findings and objections, the District Court must undertake a *de novo* review and may elect to receive further evidence or argument. Fed. R. Bankr. P. 9033. In the interest of time, this court – as the court with the authority to finally determine the matters presented by the Adversary Proceeding – should hear and determine the motion.

      F.      <u>Jury Demand Will Be Forthcoming</u>

Bankruptcy courts may only conduct jury trials if such court is specially designated to exercise such jurisdiction by the district court, the parties expressly consent, and the right to a jury trial otherwise applies. 28 U.S.C. § 157. Thus, determining whether to withdraw the reference frequently turns on whether a jury demand is available and timely made.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const., Amdt. 7. "The term 'suits at common law' included 'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *In re Harpole Construction, Inc*., 565 B.R. 193, 197 (Bankr. D.N.M. 2017), quoting *Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 348, 118 S.Ct. 1279 (1998) . "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n. 4, 109 S.Ct. 2782, 2790 (1989). Suits for damages for breach of contract or declaratory actions involving contractual rights and obligations

21

are legal actions as to which there is a right to a trial by jury. *In re Harpole Construction*, 565 B.R. at 197; *Fischer Imaging Corp. v. General Elec. Co*., 187 F.3d 1165, 1171 (10th Cir. 1999). "[T]he [C]onstitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion*, 4 F.3d at 1101. Thus, "[i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Id.* at 1101.

Although Arrowood has not yet filed its answer to the Complaint, it intends to demand a jury trial to all matters so triable. While a bankruptcy court may hear a jury trial in certain limited circumstances, it is only when designated to do so by the District Court and with the express consent of all the parties. Arrowood does not consent to a jury trial before the bankruptcy court, so this case, if not withdrawn, will eventually wind up before this court. Hence, Arrowood's jury demand and entitlement to same strongly weighs in favor of withdrawing the reference.

## III.    **Procedural Standard**

Section 157 of title 28 provides that the district court may or shall, as applicable depending on the circumstances presented, withdraw a proceeding for cause upon timely motion by a party in interest. Although the statute does not provide guidance as to when a motion is timely made,

> Courts have defined "timely" to mean as soon as possible after the moving party has notice of the grounds for withdrawing the reference. *Vieira v. AGM, II, LLC*, 366 B.R. 532, 536 n.5 (D.S.C. 2007) (citing *In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 68 (S.D.N.Y. 2006)). Courts have further required that a motion to withdraw be made promptly according to developments in the bankruptcy proceeding. *Am. Cmty. Servs., Inc. v. Wright Mktg. Inc.*, 86 B.R. 681, 686 n.7 (D. Utah 1988); *In re Horstmann*, No. 7-85-0186, 1997 Bankr. LEXIS 756, 1997 WL 266759, *23 (Bankr. D.N.M. May 16, 1997).

*In re Potter v. Friedlander*, No. 12-cv-752 MV/RHS, 2012 U.S. Dist. LEXIS 200965, *7, 2012 WL 13071965, *2 (D.N.M. Nov. 13, 2012). Similarly, the Federal Rules of Bankruptcy Procedure

22

provide only narrow guidance on the procedure – that a motion for withdrawal of a case or proceeding shall be heard by a district judge. Fed. R. Bankr. P. 5011(a).  The burden for showing cause for permissive withdrawal lies with the movant.  *In re Vaughan Co.,* 2015 U.S. Dist. LEXIS 193857 at *9, 2015 WL 13666987 at *3, *citing Cook*, 2010 U.S. Dist. LEXIS 51541, 2010 WL 1734737, *3; *Albert v. Site Mgmt., Inc.,* 506 B.R. 453, 455 (D. Md. 2014).

A motion to withdraw the reference is timely filed if it is filed as soon as possible after the moving party has notice of the grounds for withdrawing the reference.  *In re Potter*, 2012 U.S. 200965 at *7, 2012 WL 13071965 at *2.  As discussed above, this bankruptcy has been pending for over three years, and for much of that time the Pre-1977 Carriers have had no need to actively participate in court.  When called into court, Arrowood promptly filed the First Motion to Withdraw.  Now, upon commencement of the Adversary Proceeding, Arrowood is filing this Motion to Withdraw just five days after the Archdiocese served its Complaint.

The Bankruptcy Court has not invested significant judicial resources in adjudicating the Adversary Proceeding or any of the issues identified therein.  No answers, counterclaims, or substantive motions have yet been filed, and no hearings have been held.  There has been no delay, for tactical purposes, or otherwise.  *See, Lone Star Indust., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y. 1993) (finding untimely a motion to withdraw the reference where the circumstances strongly indicated forum shopping).

**CONCLUSION**

For the reasons set forth herein, Arrowood respectfully requests this Court withdraw the reference to the Adversary Proceeding and related proceedings, pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011(a) and Local Bankruptcy Rule 5011-1, and grant such further relief as the Court finds equitable and just.

23

This the 28th day of February, 2022.

Respectfully submitted,
CLYDE & CO US LLP

By: */s/ Bruce D. Celebrezze*
    Bruce D. Celebrezze
    Brian D. Harrison
    150 California Street, 15th Floor
    San Francisco, CA 94111
    Telephone:  415 365-9800
    Facsimile:  415 365-9801
    Email:  bruce.celebrezze@clydeco.us
           brian.harrison@clydeco.us

CARRUTHERS & ROTH, P.A

By: */s/ Britton C. Lewis*
    Britton C. Lewis
    235 N. Edgewood St.
    P.O. Box 540 (27402)
    Greensboro, NC 27401
    Telephone:  336 379-8651
    Facsimile:  336 273-7885
    Email:  bcl@crlaw.com

CIVEROLO, GRALOW & HILL, P.A.

By: */s/ Lisa Entress Pullen*
    Lisa Entress Pullen
    5981 Jefferson Street NE, Suite C
    Albuquerque, NM 87109
    Telephone:  505 842-8255
    Facsimile:  505 764-6099
    Email:  pullenl@civerolo.com

*Attorneys for Arrowood Indemnity Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, a true copy of the foregoing document was delivered via the CM/ECF filing system to all counsel of record.

*/s/ Lisa Entress Pullen*
Lisa Entress Pullen